DOWNEY, Judge.
The issue involved in this appeal arises out of a long-term litigation that commenced in 1983 when a local marine trade association (MIA) sued appellant, Kaye *1312 Pearson, for breach of a noncancellable four-year contract to promote a Fort Laud-erdale Boat Show. Pearson counterclaimed against MIA, certain individuals involved as MIA officers and directors, and their insurance company, Seaboard Surety Company (Seaboard), alleging that MIA and its individual officers and directors tor-tiously interfered with an advantageous business relationship. The latter cause of action was severed from the remainder of the case and the breach of contract claim was tried resulting in a judgment against MIA for one million dollars. Pearson then filed a separate complaint setting forth the severed tort claim of interference and a claim for conspiracy to disseminate false information about Pearson. In this claim Pearson was represented by Ben Weaver, Esquire, of the firm of Weaver, Weaver & Lardin. Daniel C. Petrie, Esquire, a partner in the firm of Fleming, O’Bryan & Fleming represented Seaboard, Helen Lewis, Robert Compton and Harrison Hutch-engs, who was later dropped as a party.
As the suit progressed, it became apparent to all counsel involved that Ben Weaver, lead counsel for Pearson, would necessarily be a witness regarding a substantial element of damages sought by Pearson. Accordingly, in October, 1985, Petrie, lead counsel for Seaboard, Lewis and Compton, moved the court to require the Weaver firm to withdraw as counsel for Pearson. In June, 1986, L. Anton Rebalko, Esquire, counsel for additional defendants, joined in the move to require withdrawal of Weaver from the Pearson representation. Ultimately, Ben Weaver elected to withdraw as counsel for Pearson and the firm of Had-dad, Josephs & Jack were employed as co-counsel for Pearson. Apparently, all counsel agreed that Weaver’s withdrawal would not preclude him from participation or representation of Pearson up to the date of trial, nor would it preclude him from being a witness at trial on behalf of Pearson.
Thereafter, Petrie departed the Fleming firm and joined the Weaver firm in October, 1987, precipitating a motion by Weaver for clarification and instructions by the court regarding the extent of the Weaver firm’s further participation in the litigation. Various motions and orders followed, but all culminated in the two orders of April 10, 1989, which are the subject of this appeal. After extensive argument of counsel, the trial court, among other things, ruled that the Weaver firm’s motion to withdraw was granted and neither the firm, nor any of its members, was to have any further participation in the action.
The court also provided:
This order with respect to withdrawal is intended to balance the interests of the Plaintiffs, the affected Defendants, the interests of justice, and the professional and ethical considerations of the Bar. Ben Weaver’s withdrawal as attorney for the plaintiffs is comparable to C. Daniel Petrie, Jr.’s effective withdrawal for the affected Defendants by becoming a partner in the firm of Weaver, Weaver, Lar-din & Petrie, P.A. The resolution of this situation can best be accomplished by insuring that such ties remain severed, as opposed to allowing continuing communications among the parties and previous attorneys. The Court notes that the Plaintiffs were able to obtain able counsel from the local legal community to represent their interests and the firm of Fleming, O’Bryan & Fleming was able to substitute other able attorneys in this case as well.
Furthermore, the court held that Weaver and Petrie have no discussions or communications of any sort concerning the subject matter of the litigation (except with respect to Weaver’s role as a witness and unless the parties were required to resort to the court for permission to communicate as specifically provided for in the court order), and that neither Weaver nor Petrie have any contact with counsel of record in the cause regarding the litigation. In an abundance of caution, court’s order regarding the possible necessity of communication between counsel stated:
Recognizing the unusual circumstances inherent in this case, the Court acknowledges that previous counsel in this cause (Mr. Weaver and Mr. Petrie) could conceivably have information rele *1313 vant to their previous clients’ interests which is wholly unavailable to those clients from any other source. Should any of the parties to this cause determine that such a situation confronts them and cannot be resolved except for communicating with said prior attorneys, then and in that event, the following procedure shall be utilized by that client or those clients to resolve the question of access to that information.
(Emphasis added by trial court.)
The court thereafter spelled out in detail exactly how the matters would be presented to the court for resolution. The second order was somewhat duplicative of the above order vis-a-vis prohibiting Weaver from any further representation of Pearson in this litigation.
Pearson contends on appeal that the orders in question constitute a gross abuse of discretion under the circumstances of the case. He points to the long-term complex litigation, the voluminous record presented and the myriad problems for new counsel associated with entering the case at such a late stage. There can be no question that entering a case of this nature at this stage of the proceeding puts a substantial burden on new counsel. However, as appellees submit and as the trial court was at pains to recognize in his order, both sides were adversely affected by this strange turn of events. Ben Weaver’s ethical problem as lead counsel and as a substantial witness at trial leading to his eventual withdrawal was only one side of the coin. Petrie’s migration from the Fleming firm, where he was lead counsel for a number of defendants, to the Weaver firm, which represented the plaintiff, depicts the other side of the coin.
The court recognized that all of the affected parties were adequately represented by new counsel, Pearson by the Haddad firm, the affected defendants by other members of the Fleming firm. Furthermore, as so often happens, unlike the usual situation when it is necessary to change counsel, in this case there was no temporal problem created by an impending trial and inadequate time to prepare.
It seems conceded that the trial court was required to take some action so as to assure compliance with Rules regulating the Florida Bar; namely, Rule 4-1.10(b), and other provisions of the disciplinary rules.
It appears to us that the late trial judge should be commended for crafting a very adequate resolution of an unusually complex problem. It was evenhanded in its treatment of each side and it provided for a remedy should future events bring about problems not presently envisioned. We therefore conclude that appellant cannot demonstrate on this record an abuse of discretion sufficient to warrant reversal.
Accordingly, the orders appealed from are affirmed.
HERSEY, C.J., and WARNER, J„ concur.